IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTOR ATENCIO,

       Plaintiff,

vs.                                         No. CIV 13-632 RB/KBM

SOC-LOS ALAMOS, MICHAEL SISNEROS,
AL GONZALES, and JAMES ORTEGA,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Plaintiff Victor Atencio sued his former employer, Defendant SOC-Los Alamos, for violating his rights under the Family Medical Leave Act. Defendants moved for summary judgment. (Doc. 49.) Having reviewed the parties' submissions and arguments, the Court **GRANTS** in part and **DENIES** in part the motion.

## I.    BACKGROUND

In 2006, Plaintiff began working as a security police officer with Securing Our Country ("SOC"), which is the primary security contractor at the Los Alamos National Laboratory. (Mot. Summ. J. at 1-2, Doc. 50.) Based on his own serious health condition, Plaintiff applied for Family Medical Leave Act ("FMLA") eligibility in February 2008. (Ex. D, Doc. 65-4.) FMLA provides up to twelve weeks of unpaid leave to eligible employees who need to take off time due to their own serious health conditions. 29 U.S.C. § 2612(a)(1). Plaintiff was approved for FMLA and remained eligible for the remainder of his employment. (Doc. 50 at 2.) Plaintiff took his leave intermittently, as his medical condition required. (Ex. H, Doc. 65-8 at 2.)

### A.  Disciplinary Actions Related to FMLA Leave Requests

Plaintiff alleges that SOC mishandled its FMLA procedures.  For example, SOC security officers had no system to independently track the amount of leave time they had available. (Gonzales Dep. 29:17-30:1, Ex. F, Doc. 65-6.)  SOC did not train their employees on FMLA. (Doc. 65-6 at 22:22-23:14.)  Additionally, Plaintiff complains that SOC Human Resources would improperly backdate his FMLA eligibility requests, shortening the length of his approved eligibility year.  (Doc. 65 at 5.)  Without these backdating practices, Atencio claims he would have had more than sufficient time to cover his requested leave time.  (Doc. 65 at 5-6.)

For instance, in December 2010, Plaintiff called to inform SOC management that he planned on taking twenty-four hours of FMLA leave.  (Atencio Dep. 92:25-93:3, Ex. K, Doc. 65-11.)  No one at SOC told Plaintiff that he was in danger of exhausting his FMLA leave; nor did SOC have a policy of informing employees when their leave was about to expire.  (Doc. 65-11 at 90:14-91:10; Doc. 65-6 at 26:8-20.)  While Plaintiff was on FMLA leave, SOC calculated his remaining leave at sixteen hours—eight hours short of his requested twenty-four hours. (Ex. S, Doc. 65-19.)  A SOC supervisor called ten minutes before Plaintiff's shift was meant to start and informed him that he no longer had FMLA leave available and needed to report to work.  (Ortega Dep. 71:1-17, Ex. L, Doc. 65-12.)  Plaintiff claimed that he had already taken incapacitating pain medications and could not attend work.  (Doc. 65 at 6.)  According to SOC policy, security officers who are impaired by pain medications are prohibited from working.  (Ortega Dep. 80:5-12, Ex. L, Doc. 65-12.)  Based on this incident, Plaintiff was issued a letter of reprimand for taking unauthorized leave without pay.  (Ex. S, Doc. 65-19.)  SOC dropped the discipline in April of the next year after the union grieved the decision.  (Ex. AM, Doc. 65-39.)

On January 4, 2011, Plaintiff submitted a new eligibility form for FMLA.  (Ex. T, Doc. 65-20.)  SOC Human Resources gave him a Notice of Eligibility for FMLA leave beginning on January 20, 2011.  (Doc. 65-20.)  With the benefit of hindsight, both parties agree that this Notice was sent out before Mr. Atencio's previous FMLA eligibility year expired.  (Doc. 65-5 at 74:17-75:12.)  On February 8, 2011, Plaintiff requested one day of FMLA leave.  (Ex. R, Doc. 65-18.)  SOC management believed Plaintiff exhausted his FMLA time, determined that he took unauthorized leave time, and considered terminating him.  (Doc. 65-18; Sisneros Dep. 103:20-25, 104:5-24, Ex. A, Doc. 65-1.)  Management, however, was confused about "what was approved, what was not approved" and how many hours of FMLA leave were at issue.  (Doc. 65-1 at 104:5-24.)  SOC Management decided to issue Plaintiff a letter of suspension on March 16, 2011.  (Ex. AW, Doc. 65-49.)  Plaintiff grieved the suspension and Management canceled the discipline altogether in May 2011.  (Doc. 65-18.)

On October 14, 2011, Plaintiff called in to request FMLA leave.  (Ex. AR, Doc. 65-44.)  Plaintiff claims he requested eight hours, while SOC claims he requested only one hour and then failed to show up for the rest of his shift.  (*Id.*)  SOC management considered terminating Plaintiff, but canceled the discipline without taking any formal disciplinary action.  (*Id.*)

### B.  Other Disciplinary Actions

Plaintiff claims that because he took FMLA leave, he was treated worse than similarly-situated employees.  (Doc. 65 at 29.)  Although they deny that Plaintiff's treatment was related to his FMLA use, Defendants admit that Plaintiff "may have been reprimanded for 'petty stuff' that 'wouldn't be that big of a concern' for other people."  (Doc. 50 at 4.)  Defendants state in their fact section that "Plaintiff had a 'limelight' on him because of his prior disciplinary issues

involving being late and not getting paperwork done on time." (Doc. 50 at 4.) Plaintiff argues that he was disciplined for minor infractions while other employees were not.

On November 14, 2010, Plaintiff missed a radio check and was given a warning. (Ex. AJ, Doc. 65-36.) Within a five-year span, SOC had not previously disciplined employees for missing a radio check. (Ex. AL, Doc. 65-38.) Plaintiff grieved the warning and SOC dropped the discipline. (Ex. AK, Doc. 65-37.)

On February 1, 2011, Plaintiff was nineteen minutes late for work because of bad weather. (Ex. AN, Doc. 65-40; Doc. 65 at 17.) The disciplinary officer recommended corrective counseling. (Doc. 65-40 at 2.) Defendant Gonzales, upon his review of the disciplinary report in April 2011, recommended that Plaintiff be terminated. (*Id.*) In his comments, Defendant Gonzales stated he was recommending termination because Plaintiff had a letter of suspension on file due to an unauthorized use of leave. (*Id.*) SOC later canceled the discipline. (*Id.*)

Plaintiff was also written up on February 1, 2011, for time sheet fraud after he failed to note that he was nineteen minutes late. (Ex. AP, Doc. 65-42.) He was given a letter of reprimand, which he successfully grieved on the grounds that management did not timely follow the correct disciplinary procedures. (Ex. AQ, Doc. 65-43.)

On December 8, 2011, Plaintiff was disciplined for failing to turn in his paperwork for his clearance investigation, causing him to lose his clearance credentials. (Ex. P, Doc. 65-16.) Because he did not have the proper clearance, Plaintiff was unable to work in his assigned areas. (*Id.*) Management disciplined him for failing to adhere to company rules and failing to carry out orders. (*Id.*) This discipline resulted in Plaintiff's third pending letter of termination. (*Id.*) The union president knows of no other SOC employee who was recommended for termination because of a failure to turn in paperwork. (Doc. 65-15 at 34:24-35:5.)

### C.  Termination

Plaintiff was late to work several times and was ultimately fired.  (Doc. 50 at 9.)  Plaintiff was late on April 14, 2011.  (Ex. 3, Doc. 5-3.)  He was given a letter of warning.  (*Id.*)  Plaintiff was late on September 16, 2011. (Ex. 4, Doc. 5-4.)  He was given a letter of reprimand.  (*Id.*)  Plaintiff did not attend one of three required physical fitness sessions during the week of September 11-17, 2011.  (Ex. 5, Doc. 5-5.)  He was given a letter of suspension.  (*Id.*)  Plaintiff was late to work on October 27, 2011.  (Ex. 6, Doc. 5-6.)  He was terminated for the lateness on November 17, 2011.  (Ex. AS, Doc. 65-45.)  Plaintiff continued to work at SOC because he did not receive the termination letter.  (Ex. AV, 65-48.)

On December 15, 2011, SOC management told Plaintiff to turn in his badge and clear out his locker.  (Ex. W, Doc. 65-23.)  He was scheduled to meet with human resources the next day.  (*Id.*)  On that day, Plaintiff called in sick stating he was not feeling well and his truck broke down.  (*Id.*; Atencio Aff. ¶ 3, Doc. 65-27.)  SOC issued Plaintiff a letter of termination for failure to follow orders.  (*Id.*)  Although he no longer had any remaining sick days, Plaintiff claims he was still FMLA eligible and should have been able to take leave without pay on December 16.  (Doc. 65 at 12.)  Plaintiff does not mention whether he was feeling sick because of his FMLA-eligible condition.

### D.  Legal Challenge

On July 10, 2013, Plaintiff sued his employer, SOC-Los Alamos; the SOC labor relations manager, Michael Sisneros; the SOC human resources manager, Al Gonzales; and one of his supervisors, Jimmy Ortega.  (Compl., Doc. 1.)  The parties agreed to dismiss Defendant Jimmy Ortega from the suit.  (Doc. 68.)  On June 24, 2014, Defendants moved for summary judgment on all claims.  (Doc. 49.)  Plaintiff opposes the motion.  (Doc. 65.)

## II.      LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it could influence the determination of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party.  *Id*.  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559-60 (2006).  If there is a genuine dispute of material fact, then the "facts must be viewed in the light most favorable to the nonmoving party . . . ."  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

## III.     DISCUSSION

Plaintiff brings three claims, all arising under FMLA.  Employers face liability under FMLA for interfering with an employee's legitimate use of leave and for retaliating against an employee who has legitimately taken leave.  29 U.S.C. § 2615(a)(1)-(2).  Section 2617(c)(1) of FMLA provides that actions must be brought within two years of the alleged violation.  29 U.S.C. § 2617(c)(1).  However, if the plaintiff alleges a willful violation of FMLA, the action may be brought within three years of "the last event constituting the alleged violation for which such action is brought."  29 U.S.C. § 2617(c)(2).  The word "willful . . . is generally understood to refer to conduct that is not merely negligent."  *Packard v. Cont'l Airlines, Inc.*, 24 F. App'x 960, 961 (10th Cir. 2001) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  The Plaintiff must show that SOC knew its conduct was prohibited by FMLA or acted with reckless disregard towards FMLA's requirements.  *See id.*

6

Defendants argue that the two year statute of limitations should apply.  (Doc. 50 at 16-17.)  Plaintiff argues Defendants' violations were willful and thus the three year statute of limitations should apply.  (Doc. 65 at 33.)  He says that SOC management, in particular Defendants Sisneros and Gonzales, inexplicably changed—or "manipulated"—his eligibility year dates despite knowing the FMLA regulations.  (*Id.* at 30.)  Furthermore, he says that he was targeted for failing to turn in paperwork or neglecting other petty matters.  (*Id.* at 29.)  Viewing the facts in a light most favorable to the non-moving party, the Court will consider events across the three year period for the purposes of this Motion.

Invoking the theory of continuing violations, Plaintiff argues that the Court should consider actions that happened outside of the statutory time frame.  (Doc. 65 at 33.)  The continuing violation doctrine, generally applied in the Title VII context, permits a plaintiff to challenge incidents that occurred beyond the statutory limit "if such incidents are sufficiently related and thereby constitute a continuing pattern of discrimination."  *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).  The Tenth Circuit has not decided this issue.  *See Packard*, 24 F. App'x at 962 (10th Cir. 2001) (noting that the Tenth Circuit has not decided if the continuing violation doctrine applies to FMLA claims).  Regardless, the doctrine does not apply to Plaintiff's claims.  "[E]quitable tolling may [only] be appropriate where a plaintiff has been lulled into inaction" through the Defendants' "active deception" or some other means.  *Id.* (quoting *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1267 (10th Cir. 1996)).  Even had the Defendants engaged in deceptive practices, Plaintiff was never lulled into inaction.  He regularly opposed and grieved the discipline he received from SOC.  (Doc. 65 at 28-30.)  The Court will only consider adverse actions that occurred within the three year time limit.

**A. Retaliation Claim**

Employers are expressly forbidden from retaliating against employees who exercise their rights under FMLA.  *See* 29 U.S.C. § 2615(a)(2).  Claims of retaliation are not limited to whistle-blower claims where an employee complains about a FMLA violation and is subsequently disciplined.  In the Tenth Circuit, a claim of retaliation under FMLA "may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

FMLA retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework.  *Campbell*, 478 F.3d at 1287.  If plaintiff can establish a prima facie case of FMLA retaliation, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action.  *Id.* at 1290.  Then, the burden shifts back to the plaintiff to raise a genuine dispute over whether the employer's stated reasons are pretextual.  *Id.*

To establish a prima facie case of retaliation under the FMLA, Plaintiff must show (1) he engaged in a protected activity under FMLA; (2) SOC took an action that a reasonable employee would have found materially adverse; and (3) the circumstances permit an inference of causal connection between the two events.[1]  *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) (stating elements for a retaliation claim under FMLA); *Metzler v. Fed. Home*

---

[1] Defendants urge the Court to apply the "but-for" causation standard set forth in the Supreme Court's decision in *Nassar*, a case reviewing the framework for retaliation claims brought under Title VII.  *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013).  Since the publication of *Nassar*, the Tenth Circuit had at least four opportunities to reconsider the causation standard for FMLA retaliation claims and it has not adopted the "but-for" standard.  *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) (stating elements necessary to establish a prima facie case of retaliation under FMLA); *Wright v. Topeka*, 547 F. App'x 861, 862-63 (10th Cir. 2013) (same); *Dalpiaz v. Carbon Cnty.*, 760 F.3d 1126, 1132 & n.3 (10th Cir. 2014) (clarifying difference between interference and retaliation claims under FMLA); *Barnes v. Spirit AeroSystems, Inc.*, 533 F. App'x 851 (10th Cir. 2013) (considering FMLA retaliation claim).  The Court will follow Tenth Circuit precedent.

*Loan Bank of Topeka*, 464 F.3d 1164, 1171 & n.2 (10th Cir. 2006) (clarifying necessary showing for the second prong).

    1.   ***Letter of Reprimand***

The first adverse action that the Plaintiff challenges during the relevant time period is a letter of reprimand.  (Doc. 65 at 28.)  In December 2010, Plaintiff requested and took twenty-four hours, or about three days, of FMLA leave.  (Doc. 65-11 at 92:25-93:3; Ex. S, Doc. 65-19.)  Although SOC previously approved the leave, a SOC manager called ten minutes before Plaintiff's third day of leave and ordered him to report to work, informing him that his leave was exhausted.  (Doc. 65-19.)  Plaintiff, explaining that he had already taken incapacitating pain medications and could not operate a vehicle, refused to report to work.  (Ex. AM, Doc. 65-39.)  Plaintiff was formally reprimanded.  (Doc. 65-19.)  After receiving the letter of reprimand, Plaintiff grieved the decision and the letter was rescinded.  (Sisneros Aff. ¶ 16, Ex. 1, Doc. 50-1.)  Defendants argue that the letter of reprimand was not an adverse action because it was promptly rescinded.  (Doc. 50 at 16.)  The grievance took over four months to resolve.  (Ex. AM, Doc. 65-39.)

An action is adverse if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see also Metzler*, 464 F.3d at 1171 & n.2 (applying *Burlington Northern* to the FMLA context).  A letter of reprimand is the second level of discipline in SOC's progressive discipline policy.  (Ex. B, Doc. 65-2.)  If a letter of reprimand is present in an employee's file, the employee's next disciplinary action will likely result in a suspension.  (*Id.*)  After that, an employee is subject to termination.  (*Id.*)  Written reprimands can be adverse actions "where those reprimands made it more likely that a complaining

employee could be fired." *McGowan v. Eufala*, 472 F.3d 736, 742 (10th Cir. 2006) (citing *Roberts v. Roadway Express*, 149 F.3d 1098, 1104 (10th Cir. 1998)).

Viewing the facts in the light most favorable to Plaintiff, the letter of reprimand could be an adverse action even if it was later rescinded. The letter remained in Plaintiff's file for four months and Plaintiff was forced to contest it. (Ex. AM, Doc. 65-39.) A reasonable employee could consider this action serious enough to dissuade him from challenging discriminatory FMLA practices. *See Samuels v. Potter*, 372 F. App'x 906, 907-08 (10th Cir. 2010) (finding that the guiding question in a "materiality analysis" is case-specific and asks if a rescinded, temporary citation could dissuade a reasonable worker); *Weil v. Carecore Nat'l, LLC*, 833 F. Supp. 2d 1289, 1297-98 (D. Colo. 2011) (considering the adversity of a warning, even though the warning was later rescinded). In *Jordan*, the Tenth Circuit reasoned that "temporarily lost wages that are restored prior to trial, but after a significant delay, are 'lost or denied'" under FMLA because otherwise "employers who wrongfully denied wages could escape liability." *Jordan v. U.S. Postal Serv.*, 379 F.3d 1196, 1201 (10th Cir. 2004). Applying the same reasoning to this context, employers should not be able to bully an employee and then shield themselves from legal action by dropping the disciplinary action. The intimidation already occurred. Accordingly, Plaintiff has made a prima facie case that the reprimand was adverse.

Next, Plaintiff has to show circumstances that support an inferred causal connection between the two events. *See Smothers*, 740 F.3d at 540. The "'critical inquiry' at this prima facie stage is 'whether the plaintiff has demonstrated that the employer's action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *Metzler*, 464 F.3d at 1171 (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)). Very close temporal proximity between the protected conduct and adverse action is sufficient to

establish the causal connection for the prima facie case.  *Id.*  Plaintiff was reprimanded within days of his taking leave.  (Doc. 65-19.)  Moreover, Defendants do not disagree that there was some relation between Plaintiff's attempt to invoke FMLA and his letter of reprimand.  (Doc. 50 at 16.)  Thus, Plaintiff established a prima facie case of unlawful discrimination.

Upon a showing of the prima facie case, the Defendants have the burden to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *Metzler*, 464 F.3d at 1172.  Defendants assert that Plaintiff was not entitled to take the leave because he had already exhausted his FMLA leave, his sick leave, and his vacation time.  (Doc. 50 at 4.)  Thus, SOC deemed Plaintiff to be on unauthorized leave without pay, in violation of the company's rules. (Doc. 65-19.)   Failure to follow company rules is a legitimate, non-retaliatory reason for reprimanding an employee.  *See Dalpiaz v. Carbon Cnty.*, 760 F.3d 1126, 1132-33 (10th Cir. 2014) ("The employee's request for an FMLA leave does not shelter [him] from the obligation, which is the same as that of any other employee, to comply with the employer's employment policies, including its absence policy.").

Plaintiff challenges Defendants' characterization of the facts and claims that SOC's reasoning is pre-textual.  To establish pretext, Plaintiff points to (1) the proximate timing of his reprimand; (2) SOC's disparate treatment of him; and (3) SOC's actions contrary to its policies. (Doc. 65 at 28-31.)

First, Plaintiff points to the fact that he was disciplined days after taking FMLA leave, at least some of which was indisputably protected.  (Doc. 65 at 28.)  The Court agrees that the temporal nexus was very close.  However, temporal proximity alone is insufficient to defeat summary judgment.  *Metzler*, 464 F.3d at 1172.

Second, Plaintiff contends that he was disciplined for minor infractions while other employees were not.  (Doc. 65 at 29.)  Evidence that an employer treated a plaintiff less favorably than other similarly situated employees may preclude summary judgment.  *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1137 (10th Cir. 2003).  He relies on the warning for missing a radio check, the recommended termination for being nineteen minutes late to work, and the recommended termination for failing to turn in paperwork for his clearance investigation.  (Doc. 65-36; Doc. 65-40; Doc. 65-16.)  Plaintiff argues that no other employee was disciplined for similar infractions.  (Doc. 65-38; Doc. 65-40 at 2; Doc. 65-15 at 34:24-35:5.)  Defendants admit that Plaintiff "may have been reprimanded for 'petty stuff' that 'wouldn't be that big of a concern' for other people."  (Doc. 50 at 4.)  Defendants say "Plaintiff had a 'limelight' on him because of his prior disciplinary issues involving being late and not getting paperwork done on time."  (Doc. 50 at 4.)  Viewing the facts in the light most favorable to Plaintiff, the lateness and missed paperwork may have been related to Plaintiff's FMLA condition and leave.

Finally, Plaintiff alleges that SOC failed to follow its own policies and FMLA regulations with regard to him.  (Doc. 65 at 30-31.)  "Demonstrating that 'the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances' may in an appropriate case give rise to a fact issue regarding pretext."  *Metzler*, 464 F.3d at 1176.  According to Plaintiff, Defendants manipulated his eligibility year to reduce the number of hours available to him.  (Doc. 65 at 4-6.)  According to SOC's FMLA forms, they calculated eligibility years based on when an employee first took FMLA leave, as described in 29 C.F.R § 825.200(b)(3).  Plaintiff provided records and testimony that imply SOC backdated the beginning of his leave time, inexplicably shifted his leave eligibility year, and failed to

explain why they did not follow their stated practices.  (Doc. 65-6 at 53:13-55:11.)  Plaintiff says he would have had sufficient hours had SOC followed its own practices.

Whether or not Plaintiff had sufficient FMLA hours available is an objective question which anyone could calculate given adequate information.  Neither party, however, submitted information on how many hours Plaintiff was entitled to take.  FMLA grants qualifying employees 12 weeks of leave.  29 U.S.C. § 2612(a)(1).  Under the Regulations, when an employee takes that time intermittently, the number of available hours is calculated based on the "actual workweek."  29 C.F.R. § 825.205(b).  Thus, if an employee works 40 hours a week, the employee would have 480 hours of leave time available (12 x 40 = 480).  If, however, an employee regularly works more than forty hours in a week, the employee would have more FMLA leave available.  *See Coker v. McFaul*, 247 F. App'x 609, 612 (6th Cir. 2007) (determining that the plaintiff was entitled to 504 hours of leave a year based on his 42-hour workweek).  The record shows that while Plaintiff's base shift was 8 hours a day, he worked "daily fixed-in overtime."  (Doc. 65-11 at 92:16-18.)  If his regular workweek was more than 40-hours a week, he would have had more than 480 hours available.  But the Court does not have that information before it.  Where there is no objective evidence available to resolve the dispute, the Court must view the facts in the light most favorable to the Plaintiff.

With these three allegations, Plaintiff raised a genuine dispute of material fact about whether SOC's reasoning for the reprimand was pretextual.  In turn, SOC did not produce "abundant and uncontroverted independent evidence that no discrimination had occurred." *Doebele*, 342 F.3d at 1137 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, (2000)).  Summary judgment is inappropriate on this claim.

### *2. Letter of Suspension*

The second adverse action that Plaintiff challenges is a letter of suspension. (Doc. 65 at 28.) After the FMLA eligibility dispute in December, Plaintiff submitted a new eligibility form for FMLA on January 4, 2011. (Ex. T, Doc. 65-20.) Plaintiff was given a form that suggested he was eligible for leave starting on January 20, 2011. (*Id.*) On February 8, 2011, Plaintiff requested and took one day of FMLA leave. (Ex. R, Doc. 65-18.) After Plaintiff took the leave, Management suspected that Plaintiff did not have FMLA leave available. (*Id.*) The investigating disciplinary officer recommended that he be suspended for taking the leave, and management considered terminating him. (*Id.*) He was ultimately given a suspension. (Ex. AW, Doc. 65-49.) Plaintiff grieved the suspension and SOC management canceled the discipline on May 12, 2011. (*Id.*)

Similar to the letter of reprimand incident, Plaintiff has stated a prima facie case of retaliation regarding the suspension. A suspension, even if ultimately rescinded, could be an adverse action. *See Burlington Northern*, 548 U.S. at 57 (holding that an action is adverse if it could dissuade a reasonable worker from making a charge of discrimination). Notably, when Plaintiff was suspended, his reprimand for the December 2010 FMLA leave was still in place. (Doc. 65-18.) Additionally, the temporal nexus between the leave and the discipline was very close. *Metzler*, 464 F.3d at 1171. And again, Defendants do not deny that there was some relation between Plaintiff's attempt to invoke FMLA and his suspension. (Doc. 50 at 16.)

Defendants claim that they were attempting to enforce their legitimate workplace rules. SOC management believed Plaintiff exhausted his FMLA time and recommended terminating him for taking unauthorized time. (Doc. 65-18; Doc. 65-1 at 103:20-25.) Defendants articulate a legitimate, non-discriminatory reason for suspending Plaintiff.

Plaintiff then must show that Defendant's reasons are pretextual. In addition to the temporal proximity and different treatment discussed above, Plaintiff again alleges that SOC management manipulated his eligibility year. (Doc. 65 at 16.) In the disciplinary report, Defendant Gonzales bases the suspension on a February 2010 letter explaining Plaintiff's eligibility year. (Doc. 65-18.) However, Plaintiff's most recent FMLA notice from SOC human resources suggested that he was eligible for leave starting on January 20, 2011. (Doc. 65-20.) With the benefit of hindsight, both parties agree that this Notice was sent out before Mr. Atencio's previous FMLA eligibility year expired. (Doc. 65-5 at 74:17-75:12.) Defendant Gonzales, the human resources manager, has no explanation why he gave Plaintiff the eligibility letter. (*Id.*) Plaintiff could have justifiably relied on the letter for the premise that he had available FMLA leave time. Months later, Management dropped the discipline because it was confused about "what was approved, what was not approved." (Doc. 65-1 at 104:5-24.) SOC offers no reasons why it could not track its own systems.

Plaintiff raises a genuine dispute of material fact about whether SOC's reasoning for the suspension was pretextual. Defendants did not meet their burden for summary judgment.

### 3.  *Threat of Termination*

The third action Plaintiff challenges is a threat of termination. (Doc. 65 at 28.) On October 14, 2011, Plaintiff called in to request FMLA leave. (Ex. AR, Doc. 65-44.) Plaintiff claims he requested eight hours, while SOC claims he requested only one hour and then failed to show up for the rest of his shift. (*Id.*) SOC considered terminating Plaintiff, but the action was canceled before Plaintiff was disciplined. (*Id.*)

Again, Plaintiff has the initial burden of showing an adverse action. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an

injury or harm." *Burlington Northern*, 548 U.S. at 67.  Here, the Defendants considered termination, but did not pursue any formal discipline.  (*Id.*)  Plaintiff did not suffer any tangible adverse action.  *See Samuels*, 372 F. App'x at 907-08 (finding that a "temporary and ultimately inconsequential" citation would not dissuade a reasonable worker).  Furthermore, given his previous success with challenging the earlier discipline, a reasonable employee in Plaintiff's position might be less concerned about mere threats.  *See Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008) ("[T]he fact that an employee continues to be undeterred in his or her pursuit of a remedy, as here was the case, may shed light as to whether the actions are sufficiently material and adverse to be actionable.").  Defendants are entitled to summary judgment on this aspect of Plaintiff's claim.

### 4.  *Termination*

The final action that the Plaintiff challenges is his termination.  (Doc. 65 at 28.)  On December 15, 2011, SOC management told Plaintiff to turn in his badge and clear out his locker.  (Ex. W, Doc. 65-23.)  He was scheduled for a meeting with human resources the next day.  (*Id.*)  The following day, Plaintiff called in sick stating he was not feeling well and his truck had broken down.  (*Id.*; Atencio Aff. ¶ 3, Doc. 65-27.)  SOC management recommended termination based on this incident.  (Doc. 65-23.)  Plaintiff points to this questionable invocation of FMLA leave as the driving reason behind his termination.  (Doc. 65 at 28.)  Here, Plaintiff stated a prima facie case: he claims saying "I'm not feeling well" was sufficient to invoke his FMLA leave and he was terminated soon after taking the leave.  (Doc. 65 at 28.)  Termination is the archetypal adverse action.

Defendants adamantly oppose this version of the facts.  Defendants point to a series of attendance issues unrelated to FMLA that culminated in Plaintiff's termination.  First, Plaintiff

was late on April 13 or 14 in 2011.  (Ex. 3, Doc. 5-3; Ex. C, Doc. 65-3.)  He was given a letter of warning.  (*Id.*)  Second, Plaintiff was late on September 16, 2011.  (Ex. 4, Doc. 5-4.)  He was given a letter of reprimand.  (*Id.*)  Third, Plaintiff did not attend one of three required fitness sessions during the week of September 11-17, 2011.  (Ex. 5, Doc. 50-5.)  He was given a letter of suspension.  (*Id.*)  Fourth, Plaintiff was late to work on October 27, 2011.  (Ex. 6, Doc. 5-6.)  He was terminated for the October lateness on November 17, 2011.  (Ex. AS, Doc. 65-45.)  Defendants say that this is the trail of discipline that led to Plaintiff's termination.  (Doc. 50 at 9.)

Plaintiff does not contest the underlying basis for any of these acts of discipline, nor does he contend that any lateness was related to his serious health condition.  (Doc. 65 at 2-3.)  He only urges the Court to disregard the discipline because SOC management did not issue the discipline promptly according to the rules in the collective bargaining agreement.  Specifically, Plaintiff challenges the April-based letter of warning and the October-based letter of termination because, he argues, they were issued beyond the 45-day contractual time frame and are thus null and void.  (*Id.* at 2; Ex. B 42A(I)(B), Doc. 65-2.)  Plaintiff makes a contract-interpretation argument that he should have raised through the union's grievance process.  *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965) (requiring employees to exhaust their contract remedies before brining suit in federal court).  The Court does not serve as an appellate board for a company's personnel decisions.  *Dalpiaz*, 760 F.3d at 1133 ("[O]ur role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments." (quoting *Kendrick v. Penske Transp. Servs.*, 220 F.3d 1220, 1233 (10th Cir. 2000))).  Plaintiff showed himself perfectly capable of utilizing the grievance process in other contexts.

Even if the termination letter was void based on the contractual limits, Plaintiff gave Defendants other cause to fire him.  For instance, in December, he failed to furnish the necessary paperwork to maintain his clearance credentials.[2]  (Doc. 65-16.)   If that is insufficient for termination, Plaintiff was also 1.25 hours late to the grievance meeting he requested to challenge his termination from October 27.  (Doc. 65-48 at 2.)  One way or another, Defendants had reason to terminate Plaintiff's employment for cause based on the company's progressive discipline policy.  As such, SOC established that Plaintiff would have been dismissed regardless of his requests for FMLA leave.

Before taking any action, Defendants amassed a series of non-discriminatory reasons for terminating Plaintiff's employment.  Without evidence to demonstrate that SOC's given reasons for terminating him are "weak, implausible, inconsistent, incoherent, or contradictory," Plaintiff cannot support an inference that SOC acted pretextually.  *Metzler*, 464 F.3d at 1179-80.  Because Plaintiff failed to meet his burden to demonstrate that the reasons for his termination were pretextual, Defendants are entitled to summary judgment on this part of Plaintiff's claim.

## B.  Interference Claim

Under FMLA, an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [FMLA]."  29 U.S.C. § 2615(a)(1).  An employer's interference with an employee's FMLA rights is a violation regardless of the employer's intent.  *Metzler*, 464 F.3d at 1180.  In the Tenth Circuit, an interference claim arises when an employer makes an adverse employment decision before the employee has been

---

[2] Plaintiff argues that termination for failure to turn in paperwork is severe and unwarranted.  However, companies can determine how to discipline their employees so long as they do not based their decisions on illegal prejudices. *Kendrick*, 220 F.3d at 1233.

allowed to take FMLA leave or while the employee is still on FMLA leave.  *Dalpiaz*, 760 F.3d at 1132 (citing *Campbell*, 478 F.3d at 1287).

To establish a claim of FMLA interference, an employee must show (1) that he was entitled to FMLA leave, (2) that an adverse action interfered with his right to take FMLA leave, and (3) that the employer's action was related to his attempts to exercise his FMLA rights. *Metzler*, 464 F.3d at 1180.  The employer then bears the burden of demonstrating that the adverse decision was not "related to the exercise or attempted exercise of the employee's FMLA rights."  *Dalpiaz*, 760 F.3d at 1132 (citing *Campbell*, 478 F.3d at 1287).

Because the parties agree that Plaintiff was eligible for FMLA leave, Plaintiff only has to show that he suffered an adverse action that was related to and interfered with his FMLA rights. Plaintiff points to a number of ways in which the Defendants arguably violated FMLA's statutory and regulatory provisions.  (Doc. 65 at 22-23.)  However, none of the alleged violations are privately actionable in court unless Plaintiff can show he suffered an injury.  *See Metzler*, 464 F.3d at 1180 (requiring an adverse action as an element of an interference claim).  In order to satisfy the second prong, Plaintiff must show that he was "prevented from taking the full 12 weeks' of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave."  *Campbell*, 478 F.3d at 1287.

Plaintiff asserts that his termination provides the adverse action for his interference claim because it was grounded on his absence on December 16, 2011, and his "FMLA usage on at least five occasions."  (Doc. 65 at 26.)  Plaintiff does not state that he was prevented from taking leave time or denied permission to take leave on any of these occasions.  *See Campbell*, 478 F.3d at 1287.  Moreover, the Court has already determined that SOC's decision to terminate Plaintiff's employment was not based on his attempts to take FMLA leave.

Alternatively, Plaintiff states that "Defendants' manipulation of the proper FMLA year" led to his December 2010 reprimand.  (Doc. 65 at 26.)  Arguably, when the SOC supervisor called Plaintiff ordering him to return from his previously-approved FMLA leave (Doc. 65-19), Plaintiff was prevented from taking FMLA leave that he was entitled to take.  Considering that Plaintiff previously showed that his reprimand was related to his FMLA leave, he established a prima facie case for FMLA interference.  *Metzler*, 464 F.3d at 1180.

The employer then bears the burden of demonstrating that the adverse decision was not "related to the exercise or attempted exercise of the employee's FMLA rights."  *Dalpiaz*, 760 F.3d at 1132 (citing *Campbell*, 478 F.3d at 1287). Defendants assert that Plaintiff was not entitled to take the leave because he had already exhausted his FMLA leave, his sick leave, and his vacation time.  (Doc. 50 at 4.)  Plaintiff counters that he would have had sufficient hours had the Defendants not manipulated his eligibility year.  (Doc. 65 at 4-6.)  Given that the Court does not have the necessary evidence to calculate Plaintiff's available hours on an objective basis, the Court must view the facts in the light most favorable to the Plaintiff.  Accordingly, summary judgment is inappropriate on this claim.

### C.  Hostile Work Environment Claim

Defendants correctly argue that FMLA, by itself, does not support a hostile work environment claim.  (Doc. 50 at 6-8.)  Plaintiff does not contest this argument.  (Doc. 65.)  Any allegations Plaintiff originally made under the guise of hostile work environment are effectively covered by his claims for retaliation and interference.  Defendants are entitled to summary judgment on this Count.

IV.     CONCLUSION

Plaintiff raised a genuine issue of fact regarding his December 2010 reprimand and February 2011 suspension constituting illegal retaliation or interference under FMLA.  These claims survive under the standard for summary judgment.  In contrast, the Court finds that Plaintiff's attempts to challenge his termination under either a retaliation or an interference theory fail as a matter of law.  Finally, the Court dismisses Plaintiff's hostile work environment claim.

THEREFORE,

IT IS ORDERED that Defendants' Motion for Summary Judgment (Doc. 49) is DENIED in part and GRANTED in part.

ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE